# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF ARKANSAS
# TEXARKANA DIVISION

UNITED STATES OF AMERICA                                                              PLAINTIFF

v.                                  CASE NO: 4:19-MJ-4012

RAMIRO LOPEZ-CAMACHO                                          DEFENDANT

## MEMORANDM OPINION

BEFORE the Court is the Motion to Detain filed herein by the Government. ECF No. 8. The Motion was made on the day of Defendant's initial appearance. ECF No. 5. On that same day, Defendant waived an immediate hearing but requested a later hearing be set on the issue of whether he should be detained without bail pending trial in this matter. A hearing was scheduled for today's date, December 19, 2019.

1. **Procedural Background:**

Defendant was taken into custody on December 5, 2019, by a Special Agent with the Department of Homeland Security in DeQueen, Arkansas. He was charged by Criminal Complaint on December 11, 2019, with violation of 8 U.S.C. § 1326, illegal re-entry into the United States following a prior removal without having obtained the permission of the Attorney General or Secretary of Homeland Security of the United States. ECF No. 1. He appeared for an initial appearance on December 13, 2019. On December 19, 2019, a hearing was held regarding the Government's Motion to Detain.

2. **Factual Background:**

At the hearing on December 19, 2019, HSI Special Agent Jeremy Ridenour testified he arrested Defendant on December 5, 2019, for being illegally in the United States. SA Ridenour encountered Defendant in a convenience store in DeQueen, Arkansas. SA Ridenour was in

DeQueen, in part, looking for Defendant. At the time Defendant was taken into custody, he admitted he was a native of Mexico and was illegally present in the United States. While still at the scene of the arrest, SA Ridenour also talked to Defendant's employer, Anthony Worthy, who stated the Defendant had been working for the employer for a period of 15 years. Further, Defendant's wife, Barbara Lopez, also arrived at the scene and stated to SA Ridenour that she was aware of Defendant's illegal status and of his prior deportations from the United States.

SA Ridenour later checked Defendant's immigration and criminal histories. Defendant had been removed from the United States on three (3) prior occasions. Defendant had a prior arrest and conviction for DWI and public intoxication in DeQueen, Sevier County, Arkansas. SA Ridenour indicated Defendant had numerous other contacts with law enforcement consisting mainly of traffic citations. Finally, SA Ridenour indicated that in 2009, Defendant's wife had filed the appropriate form with the Department of Homeland Security to establish that Defendant was in a "bona fide" relationship with her. The Department approved this form and found there was a "bona fide" relationship between Defendant and Barbara Lopez. Mrs. Lopez is a United States Citizen.

The Government also introduced copies of an IRS employment form and a Social Security Card. SA Ridenour testified these documents were received from Mr. Worthy at the Special Agent's request for employment documents related to the Defendant. Both documents purported to be for an individual named Pablo Castillo Ramirez.

Defendant introduced evidence that he and his wife were living in DeQueen, Arkansas. Defendant's stepson, Jorge Chabelo, also testified at the hearing. Mr. Chabelo testified he was 19 years old and that he had known Defendant since he was one (1). He testified Defendant had previously worked for "Pilgram's" and later for Anthony Worthy. He stated Defendant lived in

DeQueen with Ms. Lopez and their two (2) minor children.

   **3.  Applicable Law:**

I first note the charge in this case, a violation of 8 U.S.C. § 1326, illegal re-entry into the United States does not carry the presumption of detention found at 18 U.S.C. § 3142(e). Further, the Court is governed in its decision by the Bail Reform Act (BRA). Specifically, 18 U.S.C. §3142(g) sets out four (4) factors to consider when making the release determination. I will consider each of those factors in turn.

   a. Nature and Circumstance of the Offense: In this case, Defendant is neither charged with a crime of violence nor a drug trafficking crime. The nature of charge here is one of status. This factor weighs in favor or release.

   b. Weight of the Evidence Against the Defendant: At this stage of the proceeding, the weight of the evidence appears to be heavily in favor of a finding of guilt. Defendant's immigration record indicates three (3) prior removals. He has not obtained permission to return to the United States. He admitted to the SA Ridenour he was a citizen of Mexico and was here illegally. Accordingly, this factor weighs in favor of detention.

   c. History and Characteristics of Defendant: Defendant has strong and long ties to the Community. He has lived in DeQueen, Arkansas for approximately 18 years. He is employed and has been for many years. He is married to a citizen of the United States. He has two (2) children who appear to be citizens of the United States. His criminal history is minor. He was convicted of DWI in 2014 and public intoxication in 2016. In neither case was he sentenced to any term of imprisonment. He has no history of failure to appear, violation of probation or parole.

   d. Nature and Danger to any Person: He has no history of violent conduct of any kind. He has no history of any conduct, other than the DWI, which shows he is a threat to any specific

person or the community. The crime with which he is charged is certainly not inherently dangerous.

Weighing all the evidence and considering the factors of §3142(g), the Defendant is clearly a person who is releasable pending trial. The Court will therefore **ORDER** Defendant released on conditions of release. A separate Order Setting Conditions of Release has been filed today allowing for Defendant's release pending trial. ECF No. 15.

e. Defendant's Immigration Status: The remaining issue is Defendant's immigration status. The Government indicated at the detention hearing that there was an in-place detainer from Immigration and Customs Enforcement (ICE) seeking to take custody of the Defendant were he to be released from custody.

The BRA clearly contemplates a situation such as the present one, where a person not legally in the United States is granted pre-trial release in a criminal matter. Specifically, 18 U.S.C. § 3142 (d) provides in part:

> (d) **Temporary detention to permit revocation of conditional release, deportation, or exclusion** -- If the judicial officer determines that–
>
> (1) such person–
>
> (B) is not a citizen of the United States or lawfully admitted for permanent residence, as defined in section 101(a)(20) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(20)); and
>
> (2) such person may flee or pose a danger to any other person or the community;
>
> such judicial officer shall order the detention of such person, for a period of not more than ten days, excluding Saturdays, Sundays, and holidays, and direct the attorney for the Government to notify the appropriate court, probation or parole official, or State or local law enforcement official, or the appropriate official of the Immigration and Naturalization Service. If the official fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion

proceedings. If temporary detention is sought under paragraph (1)(B) of this subsection, such person has the burden of proving to the court such person's United States citizenship or lawful admission for permanent residence.

The Immigration Naturalization Act (INA) provides in pertinent part:

If [ICE] finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5). When an alien is subject to removal, he shall be removed from the United States "within a period of 90 days" (in this section referred to as the "removal period"). 8 U.S.C.A. § 1231(a)(1)(A). The "removal period" shall start the date the alien is released from any other confinement. 8 U.S.C.A. § 1231(a)(1)(A)(iii). Further, during the "removal period," the INA directs that ICE "shall detain the alien." 8 U.S.C.A. § 1231(a)(2).

There are District Court cases holding the Government must choose how to proceed, either criminally or with removal under the INA. These cases essentially find that the BRA and the INA are in conflict. *See e.g., United States v. Trujillo-Alvarez*, 900 F.Supp.2d 1167 (D. Or. 2012). This Court does find these cases persuasive. While neither the Supreme Court nor the United States Court of Appeals for the Eighth Circuit appear to have addressed this issue, several other Courts of Appeals have done so.

The Sixth Circuit found no conflict between the BRA and the INA. In *United States v. Veloz-Alonso*, 910 F.3d 266 (6th Cir. 2018), that court was faced with essentially the same facts as those here. Veloz-Alonso pled guilty to illegally reentering the United States. Following his guilty plea, the district court granted him release pending sentencing. Finding a conflict between the BRA and the INA, the district court also entered an order prohibiting ICE from detaining or

removing Veloz-Alonso pending sentencing. The Sixth Circuit held:

> *[W]e find no conflict between the BRA and INA* in the manner which the Trujillo-Alvarez cases and the district court here ruled. The BRA presumes detention but allows for the permissive release of a criminal defendant. The INA mandates the detention of certain illegal aliens. Reading the BRA's permissive use of release to supersede the INA's mandatory detention does not follow logically nor would doing so be congruent with our canons of statutory interpretation. One of the primary purposes of the BRA is to ensure the appearance of criminal defendants at judicial proceedings. *To the extent that ICE may fulfill its statutory mandates without impairing that purpose of the BRA, there is no statutory conflict* and the district court may not enjoin the government's agents.

910 F.3d at 270 (emphasis added). *See also United States v. Vasquez-Benitez*, ___ F.3d ____, 2019 WL 1339449 (D.C. Cir. Mar. 26, 2019). Like other District Courts in the Eighth Circuit, I find nothing in the language of the INA which subordinates it [the authority to detain and remove illegal aliens] to the BRA. *See e.g., United States v. Pacheco-Poo*, 2018 WL 6310270 (N.D. Iowa, Dec. 3 2018).

Further, a close reading of 18 U.S.C. § 3142(d) lends more credence to the foregoing proposition. Under § 3142(d), the court must stay any release order for a period of ten (10) days to allow for the deportation of a person not lawfully in the United States. This provision, on its face, presumes the government may proceed on parallel tracks in both criminal proceedings against an alien and in a removal proceeding against him at the same time. Importantly, that section does not go on to say that the criminal case must end if ICE detains the alien and pursues deportation.

Neither the INA nor the BRA, on their face, subordinate one statute to the other. The Executive Branch can proceed against an alien on parallel administrative and criminal tracks. Clearly, ICE is permitted to detain Defendant in this case for purposes of removal pursuant to the INA. So long as ICE detains the Defendant for permissible purposes under the INA, and not as a pretext of some sort to "skirt" or thwart this Court's decision in setting terms of his release under the BRA, the civil detention by ICE does not infringe on this Court's broad supervisory authority

over criminal cases pending before it. *See Vasquez-Benitez*, 2019 WL 1339449 *4.

4. **Conclusion:**

Following a hearing on today's date, the Court has entered a separate Order Setting Conditions of Release in this matter. ECF No. 15. Also by separate Order and pursuant to 18 USC § 3142(d)(1)(B) and (d)(2), the Order Setting Conditions of Release was stayed for a period of ten (10) days, excluding Saturdays, Sundays, and holidays in order for the Department of Homeland Security to take custody of the Defendant if it desires to do so pursuant to the INA. ECF No. 16. If the Department of Homeland Security does not take custody of the Defendant within this ten (10) day period, the Defendant is ordered released from the custody of the United States Marshal in accordance with the Order Setting Conditions of Release (ECF No. 15).

**ENTERED** this **19th day of DECEMBER 2019.**

/s/ *Barry A. Bryant*
BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE